ARNOLD, BURDETT & CO. *v.* SMITH & HENDERSON.

In a case where certain persons, engaged in buying and selling cotton in this State, enter into an arrangement with certain other persons in another city and State, whereby it is agreed between them that the persons resident in another State shall, as brokers, receive and sell cotton forwarded to them by the first named persons; and where such brokers make sale, on account of their principals, of cotton which is represented by the shippers as coming up to a certain grade, and said brokers guarantee to the purchaser of such cotton that it is of that grade; and where it furthermore appears that in the dealings between the brokers and their principals it was usual, in case the cotton sold by the brokers did not come up to the scale or standard guaranteed, and the purchaser made a claim for reclamation upon the brokers on account of the defects in the cotton, and the brokers paid such claim, that their principals reimbursed them; in a subsequent dealing between the same parties, where such claim for reclamation was made upon the brokers by the purchaser, and the same was paid by them, an action would lie at the instance of the brokers against their principals to recover the money paid to the purchaser, for the use of their principals, on account of such claim for reclamation.

May 9, 1890.

*Assumpsit.* Contracts. Brokers. Principal and agent. Vendor and purchaser. Actions. Sales. Before Judge HARRIS. Coweta superior court. March term, 1889.

Smith & Henderson sued Arnold, Burdett & Company on the following cause of action: On February 25, 1886, defendants had sold to J. I. Middleton & Company one hundred bales of cotton "average middling, nothing to be below middling American standard classification," for $9\frac{1}{16}$ cents per pound; defendants guaranteeing that the cotton should be up in grade to type or sample, buyers upon arrival of the cotton to examine same. For this cotton Middleton & Company paid defendants the full price before they had opportunity of examining. The cotton was not as good as was bought by Middleton & Co., but was very inferior and lacked $260.93 of being worth as much as the grade

sold.    Afterwards plaintiffs, who were cotton-brokers, at the special instance and request of defendants, paid $260.93 to Middleton & Co., and defendants promised to repay to plaintiffs said sum on demand, but had not done so.    Defendants pleaded not indebted.

The testimony for plaintiffs tended to show that they were cotton-brokers in Baltimore.    They had a contract with defendants by which defendants were to ship cotton on orders, and to guarantee weights and grades subject to American standard classification.    If it did not come up to grade, they were subject to claim.    The custom of the cotton market was, that when cotton was shipped and did not come up to grade, the shippers were subject to claim, whether the cotton was delivered to the original buyer or was resold for what it would bring.    This custom had been followed between plaintiffs and defendants in cases of other shipments previous to the shipment in question ; in these cases, cotton shipped failing to come up to grade, examination being made on behalf of the shipper by plaintiffs, or classer employed by them, payment was made to plaintiffs for the difference between the grade and the grade ordered.    In these cases plaintiffs settled for the loss in grade, and defendants then reimbursed plaintiffs.    The custom was, before the cotton arrived, for defendants to draw for its supposed value, which draft would be paid, and then when the cotton arrived, if it failed to come up to grade, plaintiffs would account to the buyer for the deficiency and it would be made good to them by defendants.    The dispute in question arose over one hundred bales of cotton shipped by defendants to plaintiffs on a sale made by plaintiffs for defendants to J. I. Middleton & Co.    The contract was, that the cotton must be "average middling, nothing below middling according to American standard classification."    Before this cotton arrived in Baltimore, defendants drew a draft for

its value according to this grade, and the draft was paid by Middleton & Co.; when the cotton arrived, fifty-seven bales of it were rejected by Middleton & Co. as below grade, and so far below grade that they could not use it; plaintiffs were notified, and the cotton was inspected by expert classers, one representing plaintiffs and the other Middleton & Co. These classers determined that the fifty-seven bales were below the contract grade, and these were sold at their highest market price. Plaintiffs reimbursed Middleton & Co.; and this suit is for the amount paid out by plaintiffs for the difference in value of the cotton and for charges on it, for weighing, drayage, etc., and $50 commissions. Defendants were not notified of the failure of the cotton to come up to grade until after the cotton had been rejected, examined, and a reimbursement made to Middleton & Co. by plaintiffs. The reason why defendants were not notified sooner was, because plaintiffs had heard nothing from them in reference to a previous claim for some time, and had already paid their draft and the freight on the cotton, which fully covered the shipment, and could not tell the amount of the claim until they had disposed of the rejected cotton; so they thought it useless to write to defendants until they were prepared to give them full particulars. As soon as the matter was adjusted,'they did write that Middleton & Co. would draw on defendants for the amount of the claim. Middleton & Co. did draw, and defendants refused to pay the draft; whereupon plaintiffs paid Middleton & Co. as above stated. They had not been notified by defendants not to so pay Middleton & Co. They derived their authority to reimburse Middleton & Co. from the fact that defendants had previously paid such claims to them. The claim of Middleton & Co. was a just claim, and the shipment was guaranteed to them through plaintiffs. There was testimony for plaintiffs tending to show that

it is the universal custom for cotton-brokers, where the cotton shipped does not come up to the grade ordered, to make the difference good to the buyer and then make their claim on the shippers. Plaintiffs have always adjusted differences as they did in this case by paying the buyers, and defendants have always, until this case, made the difference good to plaintiffs. The draft drawn by defendants for the supposed value of the cotton was paid by Middleton & Co. to plaintiffs on January 20th. The cotton reached Baltimore about February 5th, and it was immediately discovered that it was not up to grade. Middleton & Co. notified plaintiffs, and the examination was made as above stated. On February 26th plaintiffs reimbursed Middleton & Co., and on February 27th plaintiffs wrote to defendants that the fifty-seven bales were rejected, and that Middleton & Co. had sold them after consulting with plaintiffs, and had drawn for the balance due. On the 1st of March, defendants wrote to plaintiffs stating that they declined to pay the bill, because they insisted that the cotton was fully up to any previous shipment. In the same letter they stated that if the cotton had not been forwarded on receipt of the letter, plaintiffs would please let them know promptly, as they so much disliked anything of the sort to come up; that they would prefer in person to settle it. On March 6, 1886, plaintiffs wrote to defendants that they returned samples of the fifty-seven bales which they rejected, and that plaintiffs would have to make the claim good to Middleton & Co., and felt confident that defendants would protect them as they had always done. Defendants refused to pay the claim, and this suit was brought.

The testimony for defendants tended to show that the cotton shipped fully came up to the contract and to types of the cotton desired, which had been furnished to defendants by plaintiffs; that no complaint

was made about the cotton for more than a month, in which time it had declined in price from three eighths to one half of a cent, and defendants had no notice of any objections to the cotton until they were drawn on for what Smith & Henderson claimed as loss in grade; that defendants had allowed some small claims before, but as they had still made some money they had continued the business; that defendants gave plaintiffs no authority to pay any amount of money, nor to make any settlement with any one; and that the rule is, where parties disagree, for each party to select referees and let them say what is right, all parties having notice and the right to appear before the referees and represent themselves. By plaintiffs' direction the cotton was shipped to Middleton & Co., and the draft drawn on Middleton & Co. for its value. There is no custom which will bind a party to a settlement of which he had no notice, and where he had no opportunity to be heard.

The jury found for the plaintiffs the amount sued for. The defendants moved for a new trial on the grounds (1) that there is nothing in the contract sued on authorizing plaintiffs to degrade the quality of the cotton; and (2) that the verdict is contrary to law and evidence. The motion was overruled, and exception was taken.

R. S. BURCH and ATKINSON & HALL, for plaintiffs in error.

P. H. BREWSTER and McCLENDON & FREEMAN, contra.

BLANDFORD, Justice.

From the report of the facts in this case, which by an examination of the record itself we find to be correct, we are satisfied that a verdict should have been rendered in favor of the defendants in error against the plaintiffs in error, and that the court did not abuse his discretion in refusing to grant a new trial.

*Judgment affirmed.*